IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK JAMES BYRNE, JR.,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.   23-5066 |
| | : | |
| **JEFFREY SMITH,** *et al.* | : | |
| Defendants. | : | |

MEMORANDUM

**MURPHY, J.**                                                                                              August 13, 2024

Plaintiff Frank James Byrne, Jr., a prisoner currently incarcerated at SCI Rockview, filed this action alleging violations of his rights based on events that occurred while he was housed as a pretrial detainee at the Berks County Jail.  Because Mr. Byrne's initial submissions in this case presented numerous claims and allegations across multiple filings, we gave Mr. Byrne an opportunity to file a complete and comprehensive amended complaint with all allegations and claims together in one pleading.  On May 9, 2024, Mr. Byrne filed his amended complaint, which is the operative pleading in this case.[1]  For the following reasons, we dismiss all but one of Mr. Byrne's claims.

I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Mr. Byrne filed his amended complaint, naming the following defendants:  (1) Berks County Jail Systems, (2) the Berks County Jail Systems Food Distribution Company, (3) PrimeCare Medical, Inc., and the following employees of the jail:  (4) Warden Jeffrey Smith; (5)

---

[1] *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (explaining that "an amended pleading supersedes the original pleading and renders the original pleading a nullity" and that "the most recently filed amended complaint becomes the operative pleading").

Lieutenant Davis, (6) Sergeant Marshall, and correctional officers (7) Skalamara, (8) Acker, and (9) Deppert.  DI 21 at 2-3, 6.[2]  Mr. Byrne raises constitutional and state law claims based on events that occurred while he was housed as a pretrial detainee at the jail.  *Id.* at 6-7.

Mr. Byrne alleges that while he was eating his evening meal in either August or September 2023, he discovered a "metallic object" in his rice that cut his mouth "2-3 times."  *Id.* at 9.  Mr. Byrne spit out the pieces from his mouth and gave them to a correctional officer.  *Id.* at 8.  He went to Sergeant Marshall's office, and "they took photos" and allegedly interrogated him, "trying to make [him] say that non fellow–inmates put a 'Razor blade in [his] food.'"  *Id.*  When Mr. Byrne refused to say what "they" wanted him to say, Sergeant Marshall told him that she was concerned with his mental health and accused Mr. Byrne of planting a razor in his food.  *Id.*  Mr. Byrne contends, however, that the jail has not had or sold razors since 2007.  *Id.*  Mr. Byrne alleges that Sergeant Marshall "started to attack [his] mental health for 5 months along with defendant correctional officers Skalamara, Acker, and Deppert."  *Id.*

Mr. Byrne further avers that he swallowed three small pieces of the metallic object causing him to spit up blood.  *Id.* at 8-9.  He asserts that he was "spitting up blood for 2-3 days before the jail gave [him] x-rays."  *Id.* at 9.  The x-rays allegedly showed three pieces of the metallic object in Mr. Byrne's stomach, and he was rushed "to the E.R."  *Id.* at 4, 8-9.  Mr. Byrne claims that he had a CT scan, which revealed pieces of the metallic object in his small intestines.  *Id.*  Allegedly, it was also noted that the pieces had cut Mr. Byrne's small intestines and esophagus.  *Id.* at 9.  Mr. Byrne was allegedly instructed to return to the hospital in three days for

---

[2] We adopt the pagination supplied by the CM/ECF docketing system.

another CT scan and told that if the objects did not pass, he would need surgery.  *Id.*  Mr. Byrne asserts that the jail refused to take him back to the hospital, and instead, placed him in a "security body scanner."  *Id.*

Mr. Byrne asserts that defendants Acker and Deppert — correctional officers — verbally and mentally attacked him and that Deppert "caused [Byrne] to attempt suicide by hanging."  *Id.* at 4.  He contends that Lieutenant Davis violated the Emergency Medical Treatment and Active Labor Act ("EMTALA") because he did not return Mr. Byrne to the hospital for imaging to see whether the metallic objects passed and instead "forc[ed] [Byrne] into a 'security body scanner to check.'"  *Id.*  Mr. Byrne also alleges that Lieutenant Davis forced him into a "suicide smock" and made him defecate "into a 'wash basin' for 5-6 days to get the metallic object."  *Id.* at 5.  Defendants Davis and Marshall allegedly accused Mr. Byrne of swallowing staples, and Mr. Byrne contends that "another sergeant plant[ed] the staple" in his feces and took a picture.[3]  *Id.*  Mr. Byrne also alleges that defendant Smith — the warden — violated EMTALA by not permitting him "to go back to E.R. for repeat imaging" and that Smith "allowed his staff, [specifically defendant] Davis, to not send [him] back to the [hospital] for a CT scan, or x-ray by docters [sic] orders."  *Id.*  Mr. Byrne asserts claims of cruel and unusual punishment and neglect, alleging that he has suffered pain, mental distress, and humiliation.  *Id.* at 4-5.  He seeks monetary relief.  *Id.* at 9.

---

[3] Mr. Byrne does not name this sergeant as a defendant.

3

## II. STANDARD OF REVIEW

Because Mr. Byrne is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires us to dismiss his amended complaint if it fails to state a claim.  28 U.S.C. § 1915.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  "At this early stage of the litigation, we accept the facts alleged in [plaintiff's] *pro se* complaint as true, draw all reasonable inferences in [his] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (internal quotations omitted).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Mr. Byrne is proceeding *pro se*, we construe his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

Mr. Byrne brings constitutional claims pursuant to 42 U.S.C. § 1983 and related state law claims.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  For the following reasons, Mr. Byrne plausibly stated a claim for relief under federal law related to inadequate medical care but failed to allege plausible claims as to all other allegations in his amended complaint.

### 1. Mr. Byrne's claims against the Berks County Jail Systems are dismissed with prejudice because it is not a proper defendant.

Mr. Byrne has failed to state a claim against the Berks County Jail Systems. There is no legal basis for any § 1983 claims against the jail because a correctional facility is not a "person" under § 1983 and therefore is not subject to liability under the statute. *Hindes v. FDIC*, 137 F.3d 148, 158-59 (3d. Cir. 1998). This means the Berks County Jail Systems is not a proper defendant in this case, so we dismiss the Berks County Jail Systems with prejudice. To the extent that claims against "Berks County Jail Systems" can be understood to have been intended as claims against Berks County, those claims are addressed in connection with Mr. Byrne's official capacity claims against employees of Berks County below.

### 2. Mr. Byrne's claims against the Berks County Food Distribution Company are not sufficiently supported.

Mr. Byrne names the Berks County Food Distribution Company as a defendant to this action but presents no allegations against it in the amended complaint. In other words, Mr. Byrne has not alleged what this defendant did, or did not do, to violate his constitutional rights. To the extent Mr. Byrne seeks to present a claim against the Berks County Food Distribution Company, Mr. Byrne has not alleged sufficient facts to proceed against it at this time, so the claims are dismissed. However, the claims are dismissed without prejudice. Mr. Byrne may amend his complaint to clarify his allegations against Berks County Food Distribution Company.

### 3. Mr. Byrne's official capacity claims — against Warden Smith, Lieutenant Davis, and private contractor PrimeCare Medical — and claims against Berks County are insufficiently supported.

On the form used to file his complaint, Mr. Byrne checked the box indicating that he seeks to name Warden Smith and Lieutenant Davis in their official capacities. DI 21 at 3, 6. Suing government officials in their official capacity is essentially another way of bringing claims

5

against the government entity that employs those officials. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). Here, by suing defendants Smith and Davis in their official capacities, Mr. Byrne seeks to attach liability to their municipal employer, Berks County through § 1983. DI 21 at 5-6. Therefore, we assess the claims against defendants Smith and Davis together with the claims against Berks County.

To plead a basis for liability against a municipal entity under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult

choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* Mr. Byrne's allegations do not suggest that any of the events at issue can be attributed to a municipal policy or custom, so we must dismiss his claims against the Berks County defendants — Warden Smith and Lieutenant Davis, in their official capacities — and Berks County itself.

      Mr. Byrne has also named PrimeCare Medical, the private contractor providing medical services at the jail, as a defendant. The Third Circuit has held that "a private health company providing service to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, to hold a private health care company liable for a constitutional violation under § 1983, a plaintiff must allege that the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 583-84 (citing *Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("[b]ecause [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (internal quotations omitted). Mr. Byrne's amended complaint does not allege any specific allegations that medical treatment was delayed, denied, or refused due to a policy maintained by PrimeCare Medical. Instead, Mr. Byrne only lists PrimeCare Medical as a defendant. DI 21 at 6. Therefore, his claim against the private healthcare company is not sufficiently supported and will be dismissed without prejudice. Mr. Byrne may amend his complaint to provide specific

allegations of a policy maintained by PrimeCare Medical in which medical treatment was delayed, denied, or refused.

### 4. Mr. Byrne's individual capacity claims against Warden Smith fail to state a claim.

Mr. Byrne has not stated a plausible basis for an individual capacity claim against Warden Smith.  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).  "Suits against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  There are two ways in which a supervisor may be liable in their individual capacity for unconstitutional acts undertaken by subordinates.  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds, Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates [constitutional] violations."  *A.M. ex rel.*, 372 F.3d at 586.  "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  *Rode*, 845 F.2d at 1207; *see also Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir.

2020) (*per curiam*) (reasoning that a director "cannot be held liable simply because of his position as the head of the agency") (internal quotations omitted).

The basis for Mr. Byrne's claims against Warden Smith is that he allegedly did not allow Mr. Byrne "to go back to E.R. for repeat imaging" and "allowed his staff [Lieutenant] Davis to not send [Byrne] back to the [hospital]" for imaging. DI 21 at 5. Mr. Byrne alleges that Warden Smith approved Lieutenant Davis's actions, but that alone is conclusory. Mr. Byrne has not supported the allegation that Warden Smith approved Lieutenant Davis's actions with any facts from which we can infer that Warden Smith was actually aware of the specific events involving Mr. Byrne, much less that he directly approved them or acquiesced to the actions taken by his subordinates. As written, these allegations do not plausibly establish Warden Smith's personal involvement in the relevant events, or that Warden Smith maintained a policy, practice or custom of allowing his staff to deny medical care. Accordingly, the claims against Warden Smith in his individual capacity will be dismissed without prejudice.

> **5. Mr. Byrne's individual capacity claims against defendants Marshall, Skalamara, Acker, and Deppert related to verbal harassment are not actionable.**

Mr. Byrne's allegations against defendants Marshall, Skalamara, Acker, and Deppert are that they verbally harassed him. DI 21 at 4. Specifically, Mr. Byrne asserts that Sergeant Marshall accused him of planting a razor in his food and that Sergeant Marshall and correctional officers Skalamara, Acker, and Deppert, verbally "attack[ed] [his] mental health" for five months. *Id.* at 8. Mr. Byrne also alleges that Deppert's verbal attacks "caused [him] to attempt suicide by hanging." *Id.* at 4. Verbal harassment of a prisoner alone, even if offensive, does not give rise to an independent constitutional violation. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (*per curiam*) (holding that threats that inmate was a "marked man and that his

days were numbered" did not state Eighth Amendment claim); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) (*per curiam*) ("[plaintiff's] allegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983"). Accordingly, Mr. Byrne's claims against Sergeant Marshall and Correctional Officers Skalamara, Acker, and Deppert based verbal interactions with those defendants are dismissed without prejudice.

### 6. Mr. Byrne's claims pursuant to EMTALA do not state a claim for relief.

Mr. Byrne asserts claims pursuant to the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, *et seq*. DI 21 at 4-6, 9. "EMTALA requires hospitals to provide medical screening and stabilizing treatment to individuals seeking emergency care in a nondiscriminatory manner."[4] *Torretti v. Main Line Hosp., Inc.*, 580 F.3d 168, 173, *amended by* 586 F.3d 1011 (3d Cir. 2009) (no substantive changes). "Under EMTALA, any individual who suffers personal harm as a direct result of a hospital's violation of the statute may bring a private civil action for damages." *Id.* (citing 42 U.S.C. § 1395dd(d)). It is understood that "EMTALA does not apply to all healthcare facilities; it applies only to participating hospitals with emergency departments."[5] *Colon-Ramos v. Clinica Santa Rosa, Inc.*, 938 F. Supp. 2d 222, 224

---

[4] "EMTALA requires hospitals to give certain types of medical care to individuals presented for emergency treatment: (a) appropriate medical screening, (b) stabilization of known emergency medical conditions and labor, and (c) restrictions on transfer of unstabilized individuals to outside hospital facilities." *Torretti*, 580 F.3d at 172 (citing 42 U.S.C. § 1395dd(a)-(c)).

[5] "A 'participating hospital' is defined as one that has entered into a 'provider agreement' under 42 U.S.C. § 1395cc, which permits hospitals to seek Medicare or Medicaid reimbursement." *Byrne v. Cleveland Clinic*, 684 F. Supp. 2d 641, 656 (E.D. Pa. 2010) (citing 42 U.S.C. §§ 1395dd(e)(2), 1395cc).

(D.P.R. 2013) (quoting *Rodríguez v. Am. Int'l Ins. Co.,* 402 F.3d 45, 48 (1st Cir. 2005)). It "does not provide for causes of action against individual physicians, physician groups, or any other medical entity." *Byrne*, 684 F. Supp. 2d at 656.

Mr. Byrne makes EMTALA claims against Lieutenant Davis and Warden Smith. DI 21 at 4-5. Neither of these individuals are covered by EMTALA. Construing Mr. Byrne's allegations broadly, it is possible he makes EMTALA allegations against PrimeCare Medical Inc., or Berks County Jail Systems Medical Company. DI 21 at 6. However, these entities are likely not covered by EMTALA either, as neither constitute a "hospital." 42 U.S.C. § 1395dd(e)(2); *see also McClafferty v. Portage Cnty. Bd. of Comm'rs*, No. 19-2219, 2020 WL 5814526, at *4 (N.D. Ohio Sept. 29, 2020) ("If Congress had intended for EMTALA to be applicable to jails and their in-house medical providers, it would have stated as much."). Mr. Byrne does not make allegations against the hospital to which the jail took him. Therefore, the amended complaint does not contain allegations against any defendants that are subject to suit under EMTALA. Accordingly, Mr. Byrne has failed to state a plausible claim under EMTALA so his EMTALA claims are dismissed.

### 7. Mr. Byrne's constitutional claims based on the conditions of his confinement are insufficient.

We understand Mr. Byrne to be asserting constitutional claims based on the conditions of his confinement at the jail.[6] To establish a basis for a Fourteenth Amendment violation, a

---

[6] It appears that Mr. Byrne was a pretrial detainee at the time of the events in question. DI 21 at 7. Pretrial detainees' protection from punishment is governed by the Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs

pretrial detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In that regard, a "particular measure amounts to punishment when there is a showing of express intent to punish . . . , when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *see also Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). We consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("[i]n evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution"). "In determining whether restrictions or conditions are reasonably related to the [g]overnment's interest in maintaining security and order and operating the institution in a manageable fashion," we are obligated to keep in mind "such considerations are peculiarly within the province and professional expertise of corrections officials." *Stevenson*, 495 F.3d at 68 n.3.

Mr. Byrne alleges that Lieutenant Davis forced him into a "suicide smock" and made him defecate "into a 'wash basin' for 5-6 days to get the metallic object." DI 21 at 5. Plaintiff must

---

is essentially the same for purposes of the analysis. *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

allege sufficient facts to state a plausible claim that defendants engaged in "punishment" through this conduct. *See Freeman v. Miller*, 615 F. App'x 72, 77-78 (3d Cir. 2015) (no Eighth Amendment violation where convicted prisoner was placed in a "hard" cell used for suicidal inmates and "denied a desk, seat, showers, a mattress, soap, recreation, mail, and toilet paper, and was permitted to wear only underwear and a suicide smock for approximately seven days"). Here, even assuming that being kept in a smock rather than normal prison clothing is a sufficiently serious deprivation, Mr. Byrne has not alleged sufficient facts to support that defendant Davis intended to punish him by keeping him in the smock, an action that could have been rationally related to a legitimate non-punitive purpose of promoting safety. It also follows that any requirement that Mr. Byrne defecate into a basin, DI 21 at 5, may have been imposed, as Mr. Byrne suggests, to monitor whether the pieces of the metallic object that he swallowed passed. Such conditions of confinement are not, in and of themselves, unconstitutional. *Gilblom v. Gillipsie*, 435 F. App'x. 165, 168 (3d Cir. 2011) ("Gilblom's placement in a dry cell for the purpose of searching his excrement, is not, in and of itself, problematic."). In short, Mr. Byrne does not allege that Lieutenant Davis acted with an express intent to punish him, or that keeping him in the smock or requiring him to defecate in a wash basin was not rationally related to a legitimate non-punitive purpose. Accordingly, the condition of confinement claims are dismissed without prejudice.

> **8. Mr. Byrne's individual capacity claims against defendants Sergeant Marshall and Lieutenant Davis sufficiently allege a violation of the Fourteenth Amendment related to inadequate medical care.**

We understand Mr. Byrne to be asserting federal constitutional claims and state law claims against Sergeant Marshall and Lieutenant Davis based on inadequate medical care. We address the constitutional claims first.

13

(i) Federal law claims

To state a constitutional claim against prison officials in their individual capacity based on failure to provide medical treatment, a plaintiff must allege facts indicating that the officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Mr. Byrne alleges that he swallowed pieces of a metallic object that caused him to spit up blood "for 2-3 days before the jail gave [him] x-rays." *Id.* at 9. The x-rays allegedly showed three pieces of the metallic object in Mr. Byrne's stomach, and he was taken "to the ER" for

imaging. *Id.* It is not immediately clear against whom Mr. Byrne is making this claim. Construing the complaint liberally, it seems that these claims are against Sergeant Marshall and Lieutenant Davis.[7] Mr. Byrne alleges "neglect" against Sergeant Marshall, *id.* at 4, and alleges he was sent to her office after the initial razor blade incident and then not taken for medical assessment for 2-3 days, *id.* at 8-9. Regarding Lieutenant Davis, Mr. Byrne alleges that he failed to return him to the hospital "for x-rays to see if the metallic objects passed" as allegedly ordered by doctors at the hospital. DI 21 at 4.

Mr. Byrne alleges that Sergeant Marshall knew he had encountered metal objects while eating — Mr. Byrne reports that he spit out "3 metallic objects" from his mouth and gave them to a correctional officer and then was taken to Sergeant Marshall's office to discuss the issue. *Id.* at 8. His roommate reportedly also witnessed the incident and called for help. *Id.* While Mr. Byrne does not specifically allege telling Sergeant Marshall that he swallowed metal pieces, it is a reasonable inference that accidentally consuming food with metal inside could lead to ingestion. According to Mr. Byrne's allegations, Sergeant Marshall did not express skepticism regarding metal in Mr. Byrne's food, only how it got there. *Id.* Additionally, Mr. Byrne alleges that he was experiencing pain and suffering and was "spitting up blood for 2-3 days before the jail gave [him] x-rays." *Id.* at 9. Spitting up blood for numerous days seems to constitute a need "so obvious that a lay person would easily recognize the necessity for a doctor's attention." *See Monmouth*, 834 F.2d at 347.

---

[7] Mr. Byrne also made claims against Warden Jeffrey Smith, which we dismiss for the reasons stated in subpart 4.

We also understand Mr. Byrne to be asserting constitutional claims against Lieutenant Davis based on inadequate medical care during the period following Mr. Byrne's visit to the emergency room. Specifically, Mr. Byrne contends that the hospital "said [he] had to return in 3 days for a cat scan [sic] and if the objects didn't pass, surgery." *Id.* Mr. Byrne then says that Lieutenant Davis refused to take him back to the hospital for those additional scans allegedly ordered by Mr. Byrne's doctor to see whether the metallic objects passed. *Id.* at 4. As alleged, this plausibly could be preventing "a prisoner from receiving needed or recommended medical treatment" under *Rouse*. 182 F.3d at 197. Based on these allegations, Mr. Byrne has stated a claim of deliberate indifference to his serious medical needs.[8]

(ii) State law claims

It appears that Mr. Byrne also intends to raise medical malpractice and/or negligence claims pursuant to Pennsylvania law based on the events described in his amended complaint. When dealing with *pro se* filings, we "apply the relevant legal principle even when the complaint has failed to name it." *Vogt*, 8 F.4th at 185 (internal quotations omitted). Under 28 U.S.C. § 1367(c), we have supplemental jurisdiction over these claims as they "form part of the same case or controversy" as the rest of the allegations.

However, Pennsylvania has broad sovereign immunity for officials. The Pennsylvania General Assembly declared that "the Commonwealth, and its officials and employees acting

---

[8] It is possible that Mr. Byrne was under the care of a physician or nurse at the jail for this medical condition who made a different assessment than the hospital. That may affect future analysis. But accepting the facts as pled in the amended complaint as true, Mr. Byrne has stated a plausible claim for relief.

within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa.C.S. § 2310.  To impose liability on a Commonwealth party, the case must fall into one of the nine exceptions listed in Section 8522(b) of the Sovereign Immunity Act. *See e.g., Rivera v. Little*, No. 23-4217, 2024 WL 3511619, at *7-8 (July 23, 2024 E.D. Pa.); *Brown v. Wetzel*, 179 A.3d 1161, 1166 (Pa. Commw. Ct. 2018).  It does not appear that Mr. Byrne's potential medical malpractice or negligence claims fall into any of these exceptions, so we dismiss his state law claims.[9]

## IV. CONCLUSION

For the foregoing reasons, Mr. Byrne's claims against the Berks County Jail Systems will be dismissed with prejudice.  Mr. Byrne's remaining claims — other than as to the adequacy of his medical care — will be dismissed without prejudice.  The case will proceed against Lieutenant Davis and Sergeant Marshall on Mr. Byrne's claims of inadequate medical care under the Fourteenth Amendment.[10]

---

[9] For sovereign immunity to be waived as to medical professionals, specific requirements must be met. *See e.g., McCool v. Dep't of Corr. of Pa.*, 984 A.2d 565, 570 (Pa. Commw. Ct. 2009).

[10] Regarding the claims dismissed without prejudice, we also give Mr. Byrne the option to file a second amended complaint in the event he can allege additional details to state a claim against the remaining defendants and to cure the immunity issue in any state law claims he seeks to raise.  A plaintiff may clarify his claims "by . . . explaining in the [second] amended complaint the 'who, what, where, when and why' of [his] claim." *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019).  Any second amended complaint must clearly describe the factual basis for Mr. Byrne's claims against the relevant defendants and how each defendant was personally involved in the alleged denial of his constitutional rights.