IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK JAMES BYRNE, JR.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO.  23-5066 |
| | : | |
| **LT. DAVIS AND SGT. MARSHALL** | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                                           **January 13, 2026**

      Frank Byrne bit down on a sharp metal object that was in his rice, cutting open his mouth and ingesting metal fragments.  Eventually, correctional officers sent Mr. Byrne to the hospital to be treated, but he ultimately passed the ingested fragments on his own.  He accuses Sergeant Amanda Marshall and Lieutenant Leo Davis of refusing to send him to the hospital despite knowledge of his condition, and seeks to amend his complaint to add claims against LPN Elizabeth Showers and nurse Christina Najarian for care that he alleges was negligent.  Because amendment would be futile and Mr. Byrne's allegations are unsupported by the record, we deny Mr. Byrne leave to amend and grant summary judgment on his remaining claim for inadequate medical care.

**I.**       **Background**

      On September 27, 2023, *pro se* plaintiff Frank Byrne — a prisoner formerly housed at Berks County Jail — reported that he bit into a sharp metal object while eating rice.[1]  DI 46 at ¶¶ 1, 5.  When he bit into the metal object, Mr. Byrne felt something cut him.  DI 56-4

---

[1] Where possible, we cite to the stipulated facts contained in the parties' joint Rule 26(f) report (DI 46).  For simplicity, we cite directly to the appropriate paragraph(s) enumerated in section III.A of the report.  Where undisputed, we also cite to defendants' statement of undisputed material facts (DI 56-1).

(deposition of James Byrne) at 29:1-6. Corrections officer Posta (CO Posta) responded after Mr. Byrne's cellmate began banging on the on the door and calling for help. *Id.* at 29:7-19. CO Posta found Mr. Byrne standing, with both the sharp metal object and blood in his hands. *Id.* at 32:1-21; DI 56-6 (General Report Form completed by CO Posta). CO Posta took Mr. Byrne to his desk, had the sharp object taken down to the Sergeants' office, and sent Mr. Byrne to see the Sergeants. DI 56-4 at 34:9-18; DI 56-6.

Mr. Byrne spoke with Sergeants Amanda Marshall and Johnson.[2] DI 56-4 at 41:9-3. Sergeants Marshall and Johnson asked Mr. Byrne questions about the origin of the sharp object and took photos of both the metal object and Mr. Byrne's mouth. *Id.* at 35:19- 37:9; 43:21-45:24; DI 56-7. As Mr. Byrne recalls it, Sergeant Marshall told him "[d]on't think you're going to the hospital for this," before sending Mr. Byrne to the medical unit to be checked. DI 56-4 at 47:3-49:13. Elizabeth Showers, a nurse from PrimeCare Medical, Inc., which provides medical services to inmates at Berks county jail, then performed a medical examination of Mr. Byrne. DI 46 at ¶¶ 6-7; DI 56-9. Ms. Showers' report stated that no laceration was found in Mr. Byrne's mouth and that there were "no other medical concerns" at that time. DI 56-9. Mr. Byrne was not sent to the hospital after being seen by Ms. Showers.

The following day, on September 28, 2023, Mr. Byrne reported to nurse Christina Najarian that he was experiencing chest and stomach pain and that he saw blood in his toilet, which he believed to be a sign he may have swallowed metal from the sharp object in his rice. DI 46 at ¶ 8; DI 56-4 at 76:12-14. Later that day, Mr. Byrne spoke with Sergeant Marshall.[3] DI

---

[2] Sergeant Johnson's first name is not supplied by the record.

[3] At his deposition, Mr. Byrne said "I don't recall but I guess" when asked if he spoke

2

56-12 (General Report form completed by Sergeant Marshall). Mr. Byrne explained that he was having pain and believed it was related to the sharp object that was in his food the previous day, and he was sent for a medical assessment at Sergeant Marshall's request. *Id.*; DI 46 at ¶ 9. Ms. Najarian reported that she saw a "faint scant amount of blood in the toilet on the toilet paper." DI 56-13 (General Report Form completed by Ms. Najarian). Upon medically assessing Mr. Byrne, Ms. Najarian reported that a "1/4 inch" cut was also seen on the left side of Mr. Byrne's mouth. *Id.* Per Ms. Najarian's report, a "provider would be notified and review," but there were "[n]o other medical concerns" at that time. *Id.* That night, Mr. Byrne was sent to the medical unit where he was observed overnight. DI 56-4 at 115:2-20.

On the morning of September 29, 2023, Mr. Byrne was x-rayed at the request of Lieutenant Leo Davis. DI 56-14 (General Report Form completed by nurse Susan Roberts). Based on the report of Ms. Susan Roberts, another nurse at Berk's County Jail, Mr. Byrne's "medical assessment was within normal limits," and "all preliminary results were negative for foreign bodies." *Id.* Upon review by Dr. David Paul, however, it was determined that Ms. Roberts' analysis of the x-ray was incorrect: Dr. Paul determined that there were "linear metallic densities ascending the colon almost having appearance of a wire type appearance[.]" DI 56-15 (September 29, 2023 x-ray notes of Dr. David Paul); DI 56-4 at 117:10-118:5. Mr. Byrne was then sent to Reading hospital. DI 46 at ¶ 11; DI 56-4 at 120:8-10.

At the hospital, x-rays confirmed the presence of the "linear metallic objects" described by Dr. Paul. DI 56-16 (Encounter Notes from Reading Hospital) at 424; DI 56-4 at 126:3-127:3.

---

with a sergeant on September 28, 2023. DI 56-4 at 78:4. Sergeant Marshall documented her discussion that day with Mr. Byrne in a report. DI 56-12.

It was also noted, by gastroenterology fellow Daniel Weinblatt, that "the objects have passed through the most narrow portions of the GI tract (GE junction and pylorus) and will likely pass on their own." DI 56-16 at 425. Ravi K. Ghanta, MD, the attending gastroenterologist at the hospital, agreed with Mr. Weinblatt's summation, recommended follow-up x-rays, and noted that "the patient does not necessarily need to stay in the hospital to have the serial x-rays." *Id.* at 426. The emergency department notes confirmed: "the patient can be discharged back to prison, with plans for x-rays done on Sunday, and Monday outpatient with strict return precautions" if Mr. Byrne had not passed the objects.[4] DI 56-17 at 408.

Upon his return to Berks County Jail, Mr. Byrne was placed on constant observation where corrections officers surveyed his feces to see if the metal objects had passed. DI 46 at ¶ 12. On Monday, October 2, 2023, x-rays of Mr. Byrne's abdomen were taken, and Dr. Paul confirmed that there were no foreign objects in Mr. Byrne's abdomen.[5] DI 56-18 (October 2, 2023 x-ray notes of David Paul, MD). PrimeCare Physician's Assistant Jesse Kirsch thereafter confirmed that Mr. Byrne's "results are considered within normal ranges, no further visits are required." DI 56-19 (Patient Follow-up Sheet completed by Jesse Kirsch, PA-C). Mr. Byrne's constant watch was discontinued. DI 56-20 (General Report Form completed by Sergeant Nemeth); DI 56-4 at 165:14-23.

Berks County Jail maintains a grievance process, outlined in its inmate handbook, which permits inmates to seek review of problems that arise during their confinement. *Id.* at 22:11-

---

[4] Like the other reports and documented evidence, Mr. Byrne quarrels with the follow-up plan described in his hospital notes, stating it was "not what I agreed upon." DI 56-4 at 134:22-24.

[5] Mr. Byrne purportedly does not remember this x-ray taking place, but recalls going into a "body scan." DI 56-4 at 156:6-13.

4

24:4; *see generally* DI 56-5 (Berks County Jail System Inmate Handbook). Grieve-able offenses include alleged violations of an inmate's constitutional rights, violation of jail policy, and unsafe or unsanitary conditions. *Id.* Mr. Byrne, familiar with the grievance system and having received a copy of the inmate handbook, filed several grievances related to the events between September 27, 2023 and October 2, 2023. DI 46 at ¶¶ 2-4.

In particular, on September 27, 2023, Mr. Byrne filed a nine-page grievance related to the metal object in his rice. DI 56-8. Mr. Byrne's grievance states that Sergeant Marshall greeted him "unkindly, & interrogatingly," asked about his "potential enemies," and "accused him of doing it himself" which left him "humiliated for the false accusations." *Id.* The grievance does not allege that Sergeant Marshall refused to send him to the hospital.

## II.     Procedural History

Mr. Byrne initiated this lawsuit on December 12, 2023, and filed an amended complaint on May 9, 2024. DI 2, 21. Seeking $62,000,000 in monetary relief, he sued: (1) Berks County Jail Systems, (2) the Berks County Jail Systems Food Distribution Company, (3) PrimeCare Medical, Inc., (4) Warden Jeffrey Smith, (5) Lieutenant Davis, (6) Sergeant Marshall, and correctional officers (7) Skalamara, (8) Acker, and (9) Deppert. DI 21 at 2-3, 6. On August 13, 2024, we dismissed all of Mr. Byrne's claims except his claim for inadequate medical care under 42 U.S.C. § 1983 against Sergeant Byrne and Lieutenant Davis, but gave him leave to amend his other claims. DI 26. On August 26, 2024, Mr. Byrne opted not to amend: he filed a letter explaining that he wanted to "only proceed on the inadequate medical care claims against defendants Lieutenant Davis, and Sergeant Marshall, rather than file a second amended

5

complaint[.]"[6] DI 28. Seven months later, on May 6, 2025, Mr. Byrne sought to file a second amended complaint. DI 51. Sergeant Marshall and Lieutenant Davis opposed the filing of Mr. Byrne's amended complaint, DI 52, and now move for summary judgment. DI 56. Mr. Byrne has made several filings in opposition to summary judgment. DI 57, 59, 62, 63.

### III.   Standard of Review

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[7] "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant and material if it could affect the outcome of the case." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citation modified). At summary judgment we must draw all reasonable inferences in favor of the nonmoving party, *id.*, but "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." *Keating v. Pittston* City, 643 F. App'x. 219, 222 (3d Cir. 2016) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014)).

### IV.   Discussion

Mr. Byrne's case must be dismissed. Construing his second amended complaint to be a request for leave to file an amended complaint, we deny that request because an amended

---

[6] This letter was docketed on August 26, 2024, but Mr. Byrne wrote it on August 19, 2024. DI 28.

[7] As we did at the motion to dismiss stage, we construe Mr. Byrne's *pro se* filings liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). But we note that "a *pro se* plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Edwards v. Rice-Smith*, 606 F. Supp.3d 151, 154 (E.D. Pa. 2022) (Pratter, J.) (citation modified).

complaint would be futile. And because Mr. Byrne is unable to show a genuine dispute of material fact, we grant Sergeant Marshall and Lieutenant Davis's motion for summary judgment on the inadequate medical care claim.

### A. Amendment of Mr. Byrne's complaint would be futile

Mr. Byrne will not be permitted to amend his complaint. Under Federal Rule of Civil Procedure 15(a), leave to amend is freely granted "when justice so requires." Fed. R. Civ. P. 159A)(2). "Pro se plaintiffs should be given an opportunity to amend their complaints unless it clearly appears that the deficiency cannot be overcome by amendment." *Ferry v. Pace*, No. 25-1380, 2025 WL 3515395, at *2 (3d Cir. Dec. 8, 2025) (citation modified) (quoting *Montanez v. Price*, 154 F.4th 127, 152-53 (3d Cir. 2025)). "[A] district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005).

Amendment would be futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Montanez*, 151 F.4th at 152 (citation modified). In other words, we apply the familiar motion to dismiss standard to assess the futility of Mr. Byrne's proposed amendment. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."). But "liberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings." *Kreis v. Northampton County Prison*, 564 F. Supp. 3d 359, 361 (E.D. Pa. 2021) (Rufe, J.) (quoting *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019).

Mr. Byrne's amended complaint seeks to add claims for inadequate medical care under the Eighth Amendment and common law negligence against Ms. Showers, Ms. Najarian, and PrimeCare because they did not send him to the hospital during their respective encounters with him.[8]  DI 51 at 4-5.  Sergeant Marshall and Lieutenant Davis oppose Mr. Byrne's attempt to amend his complaint, arguing Mr. Byrne has demonstrated undue delay and amendment would be futile.  DI 52 at 6.  We agree that amendment would be futile.[9]

*1.  Inadequate medical care under the Eight Amendment*

An inadequate medical care claim under the Eighth Amendment "has both objective and subjective elements: A prisoner must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Montanez*, 154 F.4th at 140 (citation modified).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Id.*  Deliberate indifference exists where a prison official "knows of the serious medical need yet disregards it by failing to act reasonably."  *Id.* at 141.  Negligence or a disagreement among prisoner and medical personnel about proper treatment is insufficient to show deliberate indifference, *id.*, and "courts will not second-guess the propriety

---

[8] His claims against PrimeCare are made "[j]ust in case I have to because of the LPN's Shower's, and Najarian."  DI 51 at 5.

[9] Mr. Byrne was certainly delayed in bringing his amended complaint.  But "delay alone is an insufficient ground to deny leave to amend."  *Cureston v. National Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  And while Mr. Byrne's expression of his intent to proceed only against Sergeant Byrne and Lieutenant Davis only to go back on that decision seven months later might normally make amendment "undue," *id.*, we decline to fault Mr. Byrne for his delay because he is unrepresented.  *Montanez*, 154 F.4th at 151 ("courts have a special obligation to be more forgiving of *pro se* litigants.") (citation modified).

or adequacy of a particular course of treatment which remains a question of sound professional judgment." *Rokita v. Klinefelter*, 2025 WL 3172767, at *1 (3d Cir. Nov. 13, 2025) (citing *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)) (citation modified).[10]

      Mr. Byrne's amended complaint alleges:

> LPN Showers . . . (neglected) to send me to the ER/Hospital after seeing a 1/4 inch cut on the inside of my mouth yet reporting to see no laceration after speaking with sgt [*sic*] Marshall on the phone, and being told I wasn't going to the ER. I told LPN Showers I may have swallowed some because (some metallic objects) not "razor blades" or staples.

DI 51at 4. Similarly, he says that Ms. Najarian:

> (Neglected) to send me to the ER/Hospital after seeing blood in my toilet that I told her I was having severe pain in my upper stomach area, and . . . may have swallowed [*sic*] A piece of metal the day before, she stated to have seen a cut in my mouth 1/4 inch[.]

*Id.* at 4-5.

      We conclude that Mr. Byrne had a serious medical need because Dr. Ghanta recommended follow-up x-rays and there were "strict return precautions" if he did not pass the objects on his own. *Montanez*, 154 F.4th at 140; 56-16 at 426; 56-17 at 408. Nonetheless, amendment would be futile because the allegations of Mr. Byrne's proposed amended complaint reflect a disagreement with his course of treatment rather than a deliberate indifference to his serious medical need. *Roth v. PrimeCare*, 2019 WL 2745789, at *3 (E.D. Pa. 2019) (Kearney, J.) (dismissing claims against PrimeCare where allegations in complaint "appear to be grounded in . . . a disagreement with the medical protocol as determined by PrimeCare[.]"). Both Ms.

---

[10] Negligence is insufficient to satisfy deliberate indifference "even if it constitutes medical malpractice." *Montanez*, 154 F.4th at 140.

Showers and Najarian examined Mr. Byrne and determined that there were no further medical concerns after doing so. DI 56-9; DI 65-13. We do not second-guess the adequacy of the care rendered to Mr. Byrne just because Mr. Byrne disagrees with the conclusions they reached. *Rokita*, 2025 WL 3172767, at *1; *Montanez*, 154 F.4th at 141. Amendment to add a claim for inadequate medical care would therefore be futile.

   2. *Negligence*

We assume that Mr. Byrne's negligence claim is brought under Pennsylvania law. *Vogt*, 8 F.4th at 185 (When dealing with *pro se* filings, courts "apply the relevant legal principle even when the complaint has failed to name it.") (internal quotations omitted). Under Pennsylvania Rule of Civil Procedure 1042.3(a), a plaintiff must file a certificate of merit within 60 days after filing the complaint.[11] Pa. R. Civ. P. 1042.3(a); *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 264-65 (3d Cir. 2011) (Pennsylvania's certificate of merit requirement is "substantive law" that "must be applied as such by federal courts."). Neither Mr. Byrne's original complaint (filed in 2023) or his proposed amended complaint (filed 8 months ago) is accompanied by a certificate of merit, so we conclude that amendment to include a claim for medical negligence would be futile. *Gannaway v. Prime Care Medical, Inc.*, 150 F. Supp. 3d 511, 530-31 (E.D. Pa. 2015) (Robreno, J.) (dismissing *pro se* medical malpractice claims for failure to include a certificate of merit despite numerous extensions); *Hartman v. Corr. Med. Servs.*, 366 F. App'x 453 (3d Cir. 2010) (affirming dismissal of *pro se* medical negligence claim under analogous

---

[11] To satisfy this requirement, either an "appropriate licensed professional" must supply a statement that "there exists a probability" that the care rendered fell outside the acceptable professional standards or the plaintiff must forego the use of expert testimony by declaring it unnecessary for prosecution of his claim. Pa. R. Civ. P. 1042.3(a)(1)-(3).

Delaware statute and concluding that amendment would be futile). Because Mr. Byrne's medical negligence claims would not survive a motion to dismiss, we deny him leave to amend his complaint.

### B. Summary judgment on Mr. Byrne's inadequate medical care claim is appropriate

Having denied Mr. Byrne leave to amend his complaint, only his claim for inadequate medical care against Sergeant Marshall and Lieutenant Davis remains.[12] But that claim will also be dismissed because Mr. Byrne cannot show deliberate indifference to his serious medical need on this record. *Montanez*, 154 F.4th at 140 (citation modified). Mr. Byrne's principal allegations against Sergeant Marshall are that she "interrogated" him by suggesting that the metal object that cut him came from another inmate, questioned his mental health, and — most relevant to his inadequate medical care claim — refused to send him to the hospital. DI 21 at 8; DI 56-4 at 47:3-49:13. But, as Mr. Byrne has acknowledged, he was sent to the medical unit at Sergeant Marshall's request on both September 27, 2023, and September 28, 2023. DI 46 at ¶ 9; DI 56-4 at 48:23-24.

Similarly, Mr. Byrne's complaint faults Lieutenant Davis for not returning him to Reading hospital for follow-up x-rays. DI 21 at 4. Like Sergeant Marshall, Lieutenant Davis sent Mr. Byrne to be examined in the medical unit. DI 56-14. After Mr. Byrne's hospital visit, Dr. Ghanta noted that Mr. Byrne did "not necessarily need to stay in the hospital to have the serial x-rays." DI 56-16 at 426. And the emergency department notes explained "the patient can

---

[12] Lieutenant Davis and Sergeant Marshall posit that Mr. Byrne's Fourteenth Amendment inadequate medical care claim should be dismissed because "his claim is governed by the specific provisions of the Eighth Amendment." DI 56-2 at 5. Instead, we construe Mr. Byrne's claim as brought under the Eighth Amendment and assess it on the merits. *Vogt*, 8 F.4th at 185.

be discharged back to prison, with plans for x-rays done on Sunday, and Monday outpatient with strict return precautions" if Mr. Byrne had not passed the objects.[13] DI 56-17 at 408. Mr. Byrne's recollection that this plan was not what he "agreed to" does not suffice to show a genuine dispute regarding whether Lieutenant Davis was deliberately indifferent to his medical need. DI 56-4 at 134:22-24; *Roth v. PrimeCare*, 2019 WL 2745789, at *3.

At any rate, both Sergeant Marshall and Lieutenant Davis entrusted the medical unit — staffed by medical professionals — with Mr. Byrne's care. As the Third Circuit has explained:

> If a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a nonmedical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). The record evidence shows that the policy at Berks County Jail is that the decision to send an inmate to the hospital is made by a medical provider, not a sergeant or lieutenant. DI 56-1 at ¶ 29-30. We therefore conclude that Mr. Byrne cannot demonstrate a genuine dispute of material fact regarding whether Sergeant Marshall or Lieutenant Davis were deliberately indifferent to his serious medical need.

## V.     Conclusion

We deny Mr. Byrne's request for permission to amend his complaint at this late stage because it would be futile, and we grant Sergeant Marshall and Lieutenant Davis's motion for summary judgment for lack of evidence that Sergeant Marshall or Lieutenant Davis were

---

[13] Like the other reports and documented evidence, Mr. Byrne quarrels with the follow-up plan described in his hospital notes, stating it was "not what I agreed upon." DI 56-4 at 134:22-24.

deliberately indifference to his serious medical need.